UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

PENSION BENEFIT GUARANTY
CORPORATION, *as statutory trustee of the*
*Kaye Refining Corporation Defined Benefit Pension*
*Plan*,

                           Plaintiff,

                v.

ALAN KAYE,

                          Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
23-CV-6979 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Pension Benefit Guaranty Corporation ("PBGC"), as statutory trustee of the

Kaye Refining Corporation Defined Benefit Pension Plan (the "Plan"), commenced the above-

captioned action on September 21, 2023, against Defendant Alan Kaye, asserting claims

pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.

§ 1101 *et seq.* ("ERISA").  Plaintiff alleges that Defendant violated his fiduciary duty of loyalty

under 29 U.S.C. § 1104(a)(1)(A) and his duty of prudence under 29 U.S.C. § 1104(a)(1)(B) by

executing multiple transfers of funds from the Plan to an individual who was neither a participant

nor beneficiary of the Plan and did not provide any services for the Plan, and in doing so also

engaged in transactions prohibited under 29 U.S.C. §§ 1106(a)(1)(D) and (b)(1).  (Compl.,

Docket Entry No. 1.)  On January 12, 2024, Plaintiff moved for default judgment, seeking

damages in the amount of $29,000.00 and costs of $175.00.  (Pl.'s Mot. for Default J. ("Pl.'s

Mot."), Docket Entry No. 17; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry

No. 17-1.)

For the reasons set forth below, the Court grants Plaintiff's motion.

## I.   Background

### a.   Factual background

Plaintiff is a wholly-owned United States Government corporation, and a federal agency responsible for, among other things, guaranteeing the payment of benefits earned by participants in covered terminated pension plans.  *See* 29 U.S.C. §§ 1302(a), 1322(a); (Compl. ¶ 9).  Plaintiff became the statutory trustee[1] of the Plan on October 26, 2020, after the Plan terminated on September 30, 2020.[2]  (Compl. ¶ 15.)  At all relevant times, the Plan was a pension plan covered under ERISA.  29 U.S.C. § 1321; (Compl. ¶ 14).

Defendant was the owner and chief executive officer ("CEO") of the Plan's sponsor, Kaye Refining Corporation, a company that recovered and recycled metals from catalytic converters.  (Compl. ¶¶ 11, 13.)  At all relevant times, Kaye was a trustee and thus a named fiduciary[3] of the Plan, and also had discretionary authority in the management and disposition of

---

[1]  When a covered benefit pension plan terminates with insufficient assets to pay all benefits to participants and beneficiaries, PBGC may become the statutory trustee of the plan and can pay benefits up to the statutory limit.  29 U.S.C. §§ 1342(b)(1), 1361.  In this capacity, PBGC has the power to "collect for the plan any amounts due the plan," and to "commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan." *Id.* §§ 1342(d)(1)(B)(ii), (iv).

[2]  The Court assumes the truth of the factual allegations in the Complaint for purposes of this Memorandum and Order.

[3]  An individual is a fiduciary for purposes of ERISA "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  *Massaro v. Palladino*, 19 F.4th 197, 212 (2d Cir. 2021) (quoting 29 U.S.C. § 1002(21)(A)); *see also Allen v. Credit Suisse Securities (USA) LLC*, 895 F.3d 214, 223 (2d Cir. 2018) ("The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control' over a pension plan's assets, without regard to the title of the person exercising such control." (quoting *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812–13 (2d Cir. 1987))).

the Plan's assets and administration of the Plan.  (*Id.* ¶ 11.)  Plaintiff alleges that Defendant

authorized and caused the Plan to make seven separate transfers of funds totaling $29,000[4] to

Samantha Kaye, who Plaintiff alleges is not a participant in the Plan and did not perform any

services for the Plan.  (*Id.* ¶¶ 3, 18.)

### b.  Procedural background

On September 21, 2023, Plaintiff commenced this action, alleging that Defendant

violated his duty of loyalty under 29 U.S.C. § 1104(a)(1)(A) and his duty of prudence under 29

U.S.C. § 1104(a)(1)(B), and engaged in transactions prohibited under 29 U.S.C. § 1106 by

making the transfers to Samantha Kaye.  (Compl.)  On December 15, 2023, the Clerk of Court

noticed a default against Defendant.  (Clerk's Entry of Default, Docket Entry No. 16.)

On January 12, 2024, Plaintiff moved for default judgment on its breach of contract claim

and requested damages in the amount of $29,000 and costs of $175.  (Pl.'s Mot. 1.)

## II.  Discussion

### a.  Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step

process' for the entry of judgment against a party who fails to defend: first, the entry of a default,

and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*,

645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

"[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a

---

[4]  The transfers consisted of: (1) $1,000 transferred on or about June 21, 2016; (2) $1,000
transferred on or about June 27, 2016; (3) $4,000 transferred on or about July 14, 2016;
(4) $5,000 transferred on or about February 9, 2017; (5) $5,000 transferred on or about June 19,
2018; (6) $8,000 transferred on or about July 30, 2018; and (7) $5,000 transferred on or about
September 18, 2018.  (Compl. ¶ 18.)

matter of law when the factual allegations of the complaint are taken as true." *Bricklayers &
Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir.
2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 137). "A default . . . only establishes a
defendant's liability if those allegations are sufficient to state a cause of action against the
defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir.
2013). However, because there is "'a strong preference for resolving disputes on the merits,' and
because 'a default judgment is the most severe sanction which the court may apply,' . . . a district
court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645
F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron Oil Corp. v. Diakuhara*, 10
F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz
Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the
[defaulting] party," *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508,
514 (2d Cir. 2001)). "Further, concerns regarding the protection of a litigant's rights are
heightened when the party held in default appears *pro se*. . . . Hence, as a general rule a district
court should grant a default judgment sparingly . . . when the defaulting party is appearing *pro
se*." *Enron Oil Corp.*, 10 F.3d at 96.

"The entry of a default, while establishing liability, 'is not an admission of damages.'"
*Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d
Cir. 2009)). "There must be an evidentiary basis for the damages sought by plaintiff, and a
district court may determine there is sufficient evidence either based upon evidence presented at
a hearing or upon a review of detailed affidavits and documentary evidence." *Cement &
Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230,

234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

### b.   The Court grants default judgment against Defendant

Accepting the factual allegations of the Complaint as true, for the reasons explained below, Plaintiff has established liability as a matter of law.

### i.   Breach of fiduciary duties

Plaintiff argues that it has sufficiently alleged, and provided evidence to support, that Defendant breached his ERISA fiduciary duties of loyalty and prudence by causing the transfers of the Plan's funds to Samantha Kaye because the transfers were not in the sole interest of the Plan's participants and beneficiaries and were not used to pay benefits or expenses of the Plan. (Pl.'s Mem. 6.)

Pursuant to 29 U.S.C. § 1104(a)(1)(A), an ERISA fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." This is referred to as the "duty of loyalty." *Falberg v. Goldman Sachs Grp.*, No. 22-2689, 2024 WL 619297, at *1 (2d Cir. Feb. 14, 2024) ("ERISA mandates that fiduciaries adhere to the duty of loyalty, which requires them to 'discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan.'" (quoting *In re DeRogatis*, 904 F.3d 174, 193 (2d Cir. 2018))); *see also Cunningham v. Cornell Univ.*, 86 F.4th 961, 970 (2d Cir. 2023) (same); *Pension Benefit Guaranty Corp. v. Galicia*, No. 23-CV-4633, 2023 WL 7327235, at *2 (S.D.N.Y. Nov. 7, 2023) (same). "A fiduciary that puts its own

economic interests ahead of the interests of the retirement plan and its beneficiaries breaches its duty of loyalty and thereby violates ERISA." *Falberg*, 2024 WL 619297, at *1 (citing *Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 32 (2d Cir. 2002)); *see also Anderson v. Advance Publ'ns, Inc.*, No. 22-CV-6826, 2023 WL 3976411, at *2 (S.D.N.Y. June 13, 2023) ("To plead a duty of loyalty claim under ERISA, a plaintiff must allege facts showing that a fiduciary acted for the purpose of providing benefits to itself or someone else." (quotation omitted)); *Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, No. 20-CV-7561, 2022 WL 861640, at *7 (S.D.N.Y. Mar. 23, 2022) ("The duty of loyalty requires fiduciaries to avoid 'placing [their] interests or the interests of a third party above that of plan participants or beneficiaries.'" (quoting *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 688 (D. Conn. 2018) (alteration in original))).

An ERISA fiduciary is also required to adhere to a "duty of prudence," which requires that he "discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *see also Falberg*, 2024 WL 619297, at *1 ("ERISA also mandates that fiduciaries adhere to the duty of prudence, which requires them to 'discharge their duties with the care, skill, prudence and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use.'" (quoting *In re Derogatis*, 904 F.3d at 193)); *see also Cunningham*, 86 F.4th at 970 (same).

Plaintiff alleges that Defendant, as a trustee, was a fiduciary of the Plan and violated his duties of loyalty and prudence by transferring funds to an individual who was not a participant or beneficiary of the plan, and who had not performed any services for the Plan. (Compl. ¶ 3; Pl.'s

Mem. 6.)  Accepting the allegations in the Complaint as true, Plaintiff has established that Defendant breached his duty of loyalty under section 1104(a)(1)(A) by causing money belonging to the Plan to be transferred for a purpose other than (1) "providing benefits to participants and their beneficiaries" or (2) "defraying reasonable expenses of administering the plan," 29 U.S.C. § 1104(a)(1)(A), and his duty of prudence under section 1104(a)(1)(B) by failing to use "care, . . . prudence, [or] diligence" in his role as a fiduciary of the Plan.  *See, e.g.*, *Galicia*, 2023 WL 7327235, at *3 (granting default judgment on the plaintiff's breach of fiduciary duty of loyalty and duty of prudence claims where it alleged that the defendant, trustee and fiduciary of the pension plan at issue, "caus[ed] the [p]lan to transfer assets to a corporate entity that [the d]efendant was the sole owner of").

### ii.   Prohibited transactions

Plaintiff argues that Defendant also violated 29 U.S.C. §§ 1106(a)(1)(D) and (b)(1) by engaging in prohibited transactions where he transferred the funds from the Plan for his own interest, to satisfy "some type of obligation or wish that he had to provide financial support to Samantha Kaye."  (Pl.'s Mem. 7–8.)

ERISA fiduciaries are proscribed from engaging in "prohibited transactions," which are "certain transactions deemed 'likely to injure the [retirement] plan.'"  *Cunningham*, 86 F.4th at 970 (quoting *Harris Tr.*, 530 U.S. at 241–42) (alteration in original); *see also* 29 U.S.C. § 1106 (prohibiting, pursuant to certain exceptions, transactions "between [a] plan and party in interest" and "between [a] plan and fiduciary").  Although the fiduciary duties in sections 1104 and 1106 "'may overlap,' breaching one of these provisions 'does not necessarily' imply that the other has been violated as well."  *Cunningham*, 86 F.4th at 970 (quoting *Sweda v. Univ. of Pa.*, 923 F.3d 320, 327 (3d Cir. 2019)).

As relevant here, 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from "engag[ing] in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." Section 1106(b)(1) further prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." *See also Hannan v. Hartford Fin. Servs., Inc.*, 688 F. App'x 85, 90 (2d Cir. 2017) ("ERISA prohibits a fiduciary from engaging in a direct or indirect 'transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.' The statute also prohibits a fiduciary from 'deal[ing] with the assets of the plan in [his] own interest or for [his] own account.'" (quoting 29 U.S.C. §§ 1106(a)(1)(D), (b)(1)) (first alteration in original)).

Plaintiff's allegations establish as a matter of law that Defendant engaged in transactions in his own interest and for his own benefit as a fiduciary, and therefore a party in interest. Plaintiff does not allege that Samantha Kaye is a party in interest,[5] but rather alleges that the transfers were "for the benefit of [Defendant] because they satisfied some type of obligation or wish that he had to provide financial support to Samantha Kaye" and that Defendant "failed to take any action to seek repayment of the [t]ransfers from Samantha Kaye." (Compl. ¶¶ 30, 36.) Plaintiff has thus alleged that Defendant, as a fiduciary, withdrew from the Plan to satisfy a personal financial obligation in violation of section 1106(a)(1)(D) by transferring the money for his own benefit as a party in interest and section 1106(b)(1) by paying Samantha Kaye in his

---

[5] The Court notes that in its motion, Plaintiff states that Samantha Kaye is Defendant's "adult daughter," (Pl.'s Mem. 1), which would qualify her as a "party in interest" as defined under 29 U.S.C. § 1002(14)(F). Plaintiff, however, does not expressly allege a familial relationship between Defendant and Samantha Kaye in the Complaint, and therefore the Court cannot consider it in its determination of whether Plaintiff adequately states a claim under section 1106(a)(1)(D).

own interest and failing to seek to reimburse the Plan.  *See, e.g.*, *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) (noting that section 1106 is designed "to bar categorically a transaction that [is] likely to injure the pension plan" (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993) (alteration in original)); *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty.*, 634 F. Supp. 2d 290, 313 (E.D.N.Y. 2009) (concluding that defendants violated section 1106 by failing to recover money withdrawn by a fiduciary because "by failing to recover this money, the defendants . . . caus[ed] the [p]lan to extend credit to a party in interest").

The Court therefore grants default judgment as to Plaintiff's claims under sections 1106(a)(1)(D) and (b)(1).

### c.  Damages

Based on the evidence submitted in support of Plaintiff's motion, the Court is able to sufficiently determine damages without an evidentiary hearing.

#### i.  Compensatory damages

Plaintiff seeks compensatory damages in the amount of $29,000, the total amount of the challenged transfers, and costs in the amount of $175.  (Pl.'s Mot. 1.)

Pursuant to 29 U.S.C. § 1109(a):

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]

*See also Cedeno v. Sasson*, --- F.4th ---, No. 21-2891, 2024 WL 1895053, at *7 (2d Cir. May 1, 2024) (same).

The amounts requested by Plaintiff for the June 21, 2016, June 27, 2016, July 14, 2016, February 9, 2017, June 19, 2018, and July 30, 2018 transfers are supported by documentary evidence provided by Plaintiff.  (*See* Letters of Authorization for Wire Transfers, annexed to Pl.'s Mot. as Ex. 4, Docket Entry No. 17-5.)  Plaintiff has not, however, provided sufficient evidence to support the alleged September 18, 2018 transfer.[6]  The Court therefore grants Plaintiff $24,000 in damages.

### ii.  Costs

The costs of $175 are also supported by the documentary evidence provided by Plaintiff.  (*See* Invoices, annexed to Pl.'s Mot. as Ex. 6, Docket Entry No. 17-7); *see also Finkel v. Firequench, Inc.*, No. 20-CV-10, 2020 WL 1323017, at *2 (E.D.N.Y. Mar. 20, 2020) (awarding both properly documented damages and costs).  The Court therefore also grants Plaintiff $175 in costs.

---

[6]  Plaintiff provides an email confirming that the bank that houses the account associated with the Plan was unable to locate a confirmation letter for the September 18, 2018 transfer. (*See* Merrill Lynch Email, annexed to Pl.'s Mot. as Ex. 5, Docket Entry No. 17-6.)  The email, however, does not confirm that a wire transfer took place on September 18, 2018.  (*Id.*)  Plaintiff also submitted an excerpt of the bank statement for the same account for September 1, 2018 through September 28, 2018, which indicates a transfer from the money fund on September 18, 2018, in the amount of $5,004, but does not indicate that the transfer was made to Samantha Kaye.  (Suppl. to Mot. for Default J. 2–3, Docket Entry No. 19.)  The Court therefore concludes that only an amount of $24,000 in damages is supported by the evidence provided by Plaintiff.

**III. Conclusion**

For the foregoing reasons, the Court grants Plaintiff's motion for a default judgment.  The

Court awards Plaintiff $24,000 in damages and $175 in costs from Defendant.

Dated: May 30, 2024
        Brooklyn, New York

                                SO ORDERED:


                                _____s/ MKB_____
                                MARGO K. BRODIE
                                United States District Judge